## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————  :
                                          :
**UNITED STATES SECURITIES AND**          :
**EXCHANGE COMMISSION,**                   :
100 F Street, N.E.                         :
Washington, DC 20549                       :   Civil No.
                                          :
   Applicant,              :
                                          :
**vs.**                                    :
                                          :
**CARLOS R. IRIZARRY SANTIAGO, CPA,**     :
Michaelangelos Professional Center         :
Urb. Laurels Calle Aleli #66               :
Cayey, Puerto Rico 00738                   :
                                          :
   Respondent.             :
———————————————————————  :

### MEMORANDUM OF LAW IN SUPPORT OF SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND ORDER REQUIRING COMPLIANCE WITH SUBPOENA

The United States Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this Memorandum of Law in support of its Application, pursuant to Section 21(c) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(c)], to compel Respondent Carlos R. Irizarry Santiago, CPA ("Respondent" or "Irizarry") to comply with a subpoena that the SEC issued and served on him directing him to testify and produce documents in furtherance of its investigation of violations of the federal securities laws.

### PRELIMINARY STATEMENT

Respondent, through counsel, has repeatedly failed to comply with a subpoena issued by the SEC in connection with its investigation into violations of the federal securities laws by Back to Green Mining, LLC and its principals, representatives, and affiliates ("Back to Green").  The requested testimony and documents are unquestionably relevant to the SEC's ongoing

investigation, yet Respondent, through counsel, has made it clear that he will not comply with

the SEC's subpoena absent intervention from the Court, necessitating this Application.

## STATEMENT OF FACTS

Back to Green is a Puerto Rico corporation with its principal place of business in Caguas,

Puerto Rico. *See* Declaration of Elisabeth M. Grimm filed herewith ("Grimm Decl.") at ¶ 4.

Beginning in August 2016, Back to Green offered investors the opportunity to share in the profits

of a purported mining project to be undertaken by an affiliated Colombian entity. *Id.* ¶ 6. Back

to Green did not register any offering with the Commission. *Id.*

To entice investors to participate in its unregistered offering, Back to Green ran

newspaper and radio ads in which it promised potential investors a $4,000 monthly return for

every $10,000 invested. The radio ad specified that investors would begin to receive the return

within months. *Id.* The company also referenced the promised return on investment in

presentations it provided to potential investors. *Id.* Ultimately, the offering raised approximately

$2,600,000 from approximately 150 identifiable investors. To date, investors have not received

any returns on their investments. *Id.* Although a Back to Green affiliate certified to investors

that it possessed a mining concession granted by the Colombian government, evidence indicates

that it did not possess such a concession. *Id.*

Respondent is a Certified Public Accountant licensed in Puerto Rico, doing business in

Cayey, Puerto Rico. *Id.* ¶ 5. At relevant times, Irizarry has acted as Back to Green's accountant,

and has performed accounting and other financial services for Back to Green. In one document,

Back to Green characterized Irizarry as its Accountant and Custodian of Financial Documents.

In others, Back to Green referred to Irizarry as its Chief Financial Officer. *Id.* In these roles,

evidence indicates that Irizarry personally prepared financial documents for and on behalf of the

company, including financial statements, projections, and other documents. Evidence also

indicates that Irizarry attended meetings in which the company disclosed projections and financial information to investors.  *Id. ¶ 7.*

Accordingly, the Commission's investigation has revealed that Irizarry has personal knowledge of, and documents in his custody and control relating to, Back to Green's business and financial affairs, including its securities offerings, and representations made to potential and actual investors.  *Id. ¶¶ 7, 12-15.*

## A.     The Formal Order

On November 5, 2019, pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(a)] and Section 21(a) of the Exchange Act [15 U.S.C. § 78u(a)], the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony in the Matter of Back to Green Mining LLC (the "Formal Order"). *Id. ¶ 8.*  Among other things, the Formal Order directed the Division of Enforcement to conduct a nonpublic investigation to determine whether any persons or entities had engaged in acts or practices in violation of the securities laws.  *Id.*  The Formal Order also designated certain individuals as officers of the SEC empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation. *Id.*

## B.     The Irizarry Subpoena

On December 19, 2020, pursuant to the Formal Order, Division of Enforcement staff ("Staff") issued a subpoena addressed to Irizarry ("Irizarry Subpoena") directing him to appear and testify virtually before the Commission by way of its WebEx Internet platform, and to produce documents related to the work he performed for Back to Green.  *Id. ¶¶ 9-16.*  On December 22, 2020, the Staff caused the Irizarry Subpoena to be served on Respondent by UPS,

Overnight or Second Day Delivery, delivered to his business address in Cayey, Puerto Rico. *Id.* ¶ 10.

The Staff determined that it was necessary and appropriate to obtain such information directly from this witness, as evidence indicates that he has personal knowledge related to these topics not known by other witnesses; and that he has within his custody or control important documents not readily available from other sources, if at all. *See Id.* ¶¶ 12-16.

### C.      Irizarry Has Refused to Comply with the Irizarry Subpoena

Irizarry has refused to comply with the SEC's duly issued and served subpoena, despite repeated accommodations provided by the Staff.

On January 21, 2021, counsel for Irizarry ("Counsel") sent an email to the Staff acknowledging the Irizarry Subpoena, indicating that he had been recently retained, and representing that he was in the process of gathering responsive information. Counsel also requested an extension of time to comply with the subpoena and produce responsive documents. The Staff agreed, and asked if Respondent could be available for testimony on one of three dates at the end of February. On January 22, 2021, Counsel responded, "Yes. Let me consult the date and get back to you," and on January 26, 2021, confirmed, "Yes. February 26, 2021." *Id.* ¶¶ 17-20.

On February 1, 2021, Counsel asked the Staff for a second extension to produce documents requested by the subpoena. The staff again agreed to the extension. *Id.* ¶ 22. On February 12, 2021, without having produced any documents to the SEC, Counsel emailed the Staff stating that his client "provided the relevant information to [Back to Green's counsel] who has already provided it to you, therefore, he will not be making a separate production." *Id.* ¶ 24. Counsel likely was referring to a separate production made by Back to Green, in response to a separate subpoena, requesting a different set of documents than set forth in the Irizarry

Subpoena.[1]  In response, the Staff informed Counsel that his client has separate production obligations from Back to Green, and reiterated its demand that Respondent comply with the Irizarry Subpoena.  Counsel continued to refuse, stating in a February 16, 2021 email that "Mr. Irizarry will not make a separate production and will not [] testify."  *Id.*  ¶¶ 25-26.

In response, the Staff sent Counsel a secure email attaching a letter from the Division of Enforcement Assistant Director supervising the investigation.  The letter reiterated that the subpoenas issued to Respondent and Back to Green are distinct, and that Respondent's production obligations are not satisfied by the company's production.  *Id.* ¶ 27.  Counsel did not respond.  After more unproductive exchanges with the Staff, on April 13, 2021, Counsel for the first time indicated that Irizarry was proactively intending to "invoke his Fifth Amendment right to remain silent."  *Id.* ¶ 29.  The Staff responded that Respondent's appearance at testimony is required, even if he intends to invoke his Fifth Amendment rights at that time.  *Id.* ¶ 30.  On May 1, 2021, Counsel responded to the Staff in a one-sentence email, "Mr. Irizarry wishes to remain silent."  *Id.* ¶ 31.  As further discussion with Respondent appears to be fruitless, the SEC determined that it had no other option but to seek enforcement of the Irizarry Subpoena from this Court.

**ARGUMENT**

## I.    Jurisdiction and Venue Are Proper

When a subpoenaed party refuses to comply with an SEC subpoena, jurisdiction is vested in the United States District Courts to enforce such subpoena upon application by the SEC.  *See*

---

[1]    On February 10, 2021, Back to Green produced certain documents to the SEC in response to a separate subpoena served on the company.  Grimm Decl. ¶ 24.  In its production letter, Back to Green indicated that it had received documents from its "Accountant and Custodian of Financial Documents," Irizarry.  Back to Green's production, however, did not contain many documents or categories of documents covered by the Irizarry Subpoena and believed to be in his custody or control, such as communications, notes, drafts, memoranda, or other documents personally drafted by Irizarry.  *Id.*

Section 22(b) of the Securities Act [15 U.S.C. § 77v(b)]; Section 21(c) of the Exchange Act [15 U.S.C. § 78u(c)]. Accordingly, this Court has jurisdiction over the subject matter of this application and may issue an order directing Irizarry to comply with the subpoena.

Venue is proper before this Court because an SEC subpoena enforcement action may be brought in any district court "within the jurisdiction of which such investigation or proceeding is carried on." Section 21(c) of the Exchange Act [15 U.S.C. § 78u(c)]. The present investigation is being conducted and "carried on" by SEC staff located at the SEC's headquarters in Washington, D.C.; the subpoena to Irizarry was issued from Washington, D.C.; and the subpoena calls for his virtual testimony to be taken over the SEC's internet WebEx platform hosted in Washington, D.C. *See* Grimm Decl. ¶¶ 1, 9, 10.

Accordingly, as this Court has routinely found in similar SEC subpoena enforcement actions, venue is proper in this District. *See SEC v. Waymack,* 358 F. Supp. 3d 56, 61 (D.D.C. 2019); *SEC v. Henderson,* No. 1:18-MC-00115-DLF (D.D.C. Sept. 1, 2018); *SEC v. Deloitte Touche Tohmatsu CPA Ltd.,* No. 1:11-MC-00512 (D.D.C. September 8, 2011).

## II.     The Subpoena Satisfies All Requirements for Enforcement

To enforce an administrative subpoena, a court must be satisfied that (i) the inquiry has a legitimate purpose; (ii) the subpoena was issued in accordance with the required administrative procedures; and (iii) the information sought is reasonably relevant to some subject of the inquiry. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).[2] The agency's burden in meeting this test is a "slight one," and "the requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement." *SEC v. Kimmel,* No. 19-MC-00113-CMA, 2020

---

[2]     *See also Waymack*, 358 F. Supp. 3d at 61 ("In a proceeding to enforce an administrative subpoena, the Court's role is limited to determining 'that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents [and testimony] sought are relevant to the inquiry.'") (quoting *Okla. Press Pub. Co. v. Walling,* 327 U.S. 186, 209 (1946).

WL 2800813, at *2 (D. Colo. May 29, 2020) (citations and internal quotations omitted). "The respondent may only defeat an administrative subpoena by demonstrating that the inquiry is unauthorized or unreasonable." *Waymack,* 358 F. Supp. 3d at 61 citing *SEC v. Brigadoon Scotch Distrib. Co.,* 480 F.2d 1047, 1056 (2d Cir. 1973). The respondent's burden of showing unreasonableness "is not easily met." *Brigadoon Scotch,* 480 F.2d at 1056.

As outlined below, none of these elements are in controversy in this Application, and Respondent has not contested the Irizarry Subpoenas on these bases.

## A.   The SEC's Inquiry Has a Legitimate Purpose

Congress created the SEC as an independent regulatory agency responsible for enforcing the federal securities laws and protecting the integrity of the nation's capital markets. Toward that end, in Section 21(a) of the Exchange Act [15 U.S.C. § 78u(a)], Congress gave the SEC broad authority to conduct such investigations as it deems necessary in order to determine whether any person "has violated, is violating or is about to violate" any provisions of the federal securities laws. *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984); *SEC v. Dresser Indus.,* 628 F.2d 1368, 1376-77 (D.C. Cir. 1980). Further, Congress gave the SEC authority to investigate "any facts, conditions, practices or matters" that, "in its discretion," the SEC deems necessary or proper to aid in the enforcement of the federal securities laws. 15 U.S.C. § 78u(a)(1).

Given this broad mandate, Courts routinely recognize that, "there is virtually no possibility" that the SEC, in commencing an investigation or issuing a subpoena, is acting outside of its authority,[3] even when its investigation is based on nothing more than official

---

[3]     *See Dresser Indus.*, 628 F.2d at 1380 (investigation based on Staff conclusion that company "may have engaged in conduct" in violation of the federal securities laws "falls squarely within the [SEC]'s explicit investigatory authority"); *SEC v. Blinder, Robinson & Co.* 681 F. Supp. 1, 4 (D.D.C. 1987) ("As the SEC is charged with overseeing the securities industry and preventing fraud in the trading of stocks and bonds, it is well within the scope of its authority to request

curiosity.  *See SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1023-24, n.45 (D.C. Cir. 1978)

(recognizing that "even if one were to regard a request for information . . . as caused by nothing

more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to

satisfy themselves that corporate behavior is consistent with the law and public interest.")

(internal quotation and citation omitted).

In this matter, though, the SEC is acting on far more than official curiosity.  Per the

Formal Order, the Division of Enforcement is investigating potential violations of the securities

laws by Back to Green – a company that raised more than two million dollars from investors in

unregistered offerings, and provided investors with advertisements and presentations promising

enormous and incredible returns.  Grimm Decl. ¶ 6.  Consistent with the Formal Order, the Staff

seeks testimony and documents from Irizarry, the company's accountant and Chief Financial

Officer, who by all indications has first-hand information relating to the financial affairs of Back

to Green and its securities offerings.  Grimm Decl. ¶¶ 5, 7.  Accordingly, the Irizarry Subpoena

is clearly within the scope of the Formal Order and the SEC's enforcement authority.

### B.      All Administrative Requirements Have Been Satisfied

Section 19(c) of the Securities Act [15 U.S.C. § 77s(c)] and Section 21(b) of the

Exchange Act [15 U.S.C. § 78u(b)] provide that the SEC may, in the course of conducting

investigations, designate officers and empower them to subpoena witnesses and the production

of records.

On November 5, 2019, the SEC issued the Formal Order designating the Staff, directing

them to investigate Back to Green, and empowering them to issue subpoenas as deemed

appropriate.  Pursuant to Rule 8 of the Commission's Rules Relating to Investigations, the Staff

---

information necessary to dispel or confirm suspicions of which they have substantive
evidence.").

may serve its subpoenas by several methods, including "sending the papers through a commercial courier service or express delivery service."  17 C.F.R. §§ 203.8, 201.232(c), and 201.150(d)(3).

In December 2020, the Staff properly issued and served the Irizarry Subpoena on Respondent in such a manner.  Grimm Decl. ¶ 10.  The Staff documented proper service of the subpoena on December 22, 2020 with a UPS confirmation of delivery to Respondent's Cayey, Puerto Rico business address.  *Id.*  Counsel for Respondent acknowledged receipt of the subpoena in subsequent communications with the Staff.  *Id.* ¶ 17.

### C.    The Irizarry Subpoena Seeks Information Relevant to the Investigation

As the D.C. Circuit has recognized, the SEC's subpoena power is "co-extensive" with its investigative power, and thus, a conclusion that the subpoena is too indefinite or seeks irrelevant information is essentially "foredoomed by [the Circuit's] holding that the scope of the investigation itself is adequately bounded."  *Arthur Young*, 584 F.2d at 1025.  That is, "[t]he breadth of an investigation is for the investigators to determine.  The breadth of a subpoena … may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators."  *Id*. at 1031 (quotation omitted); *see also Blinder, Robinson,* 681 F. Supp. at 4 (prima facie evidence that evidence sought has potential importance in terms of investigative objectives is sufficient to validate the scope of the request).  Accordingly, the threshold for demonstrating relevance is low, and in any event, certainly met here.

Respondent has not challenged the relevance of the information set forth in the Irizarry Subpoena, and there can be no question that the information is highly relevant to the SEC's investigation.  As discussed above, in his role as Back to Green's accountant and Chief Financial Officer, Respondent has first-hand knowledge of the financial affairs of the company, including its securities offerings and representations made to investors.  Grimm Decl. ¶¶ 7, 12-15.

Finally, as for any assertion by Respondent that he complied with the Irizarry Subpoena by producing documents to Back to Green, such is not the case.  First, the Irizarry Subpoena is different from the Back to Green subpoena, and seeks documents that are likely in Respondent's unique custody and control, including communications, drafts, notes, and memoranda that he authored.  Second, even if there is some overlap, Irizarry's complete production of his Back to Green inventory better ensures that staff is able to fully gather, identify, compare, and catalogue responsive materials.  *See* Grimm Decl. ¶ 15.

### D. Respondent's Curt Assertions of the Fifth Amendment by Email Do Not Relieve Him of His Obligations to Comply with the Subpoena

In two terse emails exchanged with SEC staff, Counsel for Irizarry summarily indicated that his client refuses to comply with the Irizarry Subpoena based on his client's choice to "remain silent," as guaranteed by the Fifth Amendment.  *See* Grimm Decl. ¶¶ 29, 31.

Respondent's sweeping assertion, however, is an improper and inadequate response to a duly issued SEC Subpoena.  As the district court recently found in *Kimmel,* No. 19-mc-00113-CMA, 2020 WL 2800813, *3, adopting *SEC v. Caramadre,* 717 F. Supp. 2d 217, 222-23 (D.R.I. 2010), a witness cannot proactively refuse to comply with a valid SEC subpoena simply by asserting a blanket objection that he is generally concerned about the prospect of incriminating himself at some point in the future.  *See Kimmel,* 2020 WL 2800813, at *3 ("Although 'the Fifth Amendment protects a party from self-incrimination; it does not protect someone from having to invoke the right to avoid self-incrimination in the first place.'"); s*ee also Caramadre,* 717 F. Supp. 2d at 223 ("Respondents cannot be excused from the interviews by predicting that all questions will be off-limits.").

To the contrary, in response to a testimonial subpoena, the witness must show up, as directed, and testify under oath as to each question asked.  He then will have the opportunity to assert his Fifth Amendment rights on a question-by-question basis.  *See Kimmel,* 2020 WL

2800813, at *3 ("Mr. Kimmel may decide to invoke the Fifth Amendment on a question by question basis, but he may not refuse to appear for testimony altogether."); s*ee also Caramadre,* 717 F. Supp. 2d at 223 ("[T]he proper procedure is for them to appear for questioning and as to each question . . . elect to raise or not to raise the defense.") (internal quotation omitted).

Similarly, in response to a document subpoena, the recipient must respond to each request, one by one, in such detail as to allow the SEC – and possibly the Court – to determine if each refusal to produce documents is justified by the Fifth Amendment. *See Caramadre,* 717 F. Supp. 2d at 224 ("This means that, just as with the testimonial subpoenas, blanket invocation of the Fifth Amendment does not get Respondents off the hook. Rather, the proper procedure is for Respondents to elect to raise or not to raise the defense with respect to each document responsive to the Subpoena." (internal citations and quotations omitted).

Such a methodical question-and-answer process is not a mere formalistic exercise. It allows the SEC – and possibly the Court – the full and fair opportunity to test and probe the Respondent's assertions, determine limits and boundaries of privileges, apply adverse inferences as appropriate in civil cases,[4] and possibly reach agreement with the witness that certain topics present no danger of self-incrimination. *See Caramadre,* 717 F. Supp. 2d at 223 (citing cases and discussing the need for the court to conduct a "particularized inquiry" into each claim of privilege).

As all criteria for subpoena enforcement are met, and there are no valid reasons for objection or denial, the Court should direct the Respondent to comply with the Irizarry Subpoena without further delay.

---

[4]    *See Kimmel,* 2020 WL 2800813, at *3 quoting *Keaton v. Office of Thrift Supervision,* 45 F.3d 322, 326 (9th Cir. 1995) ("[I]t is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.")

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant the Application and enter an Order, in the form submitted, requiring Respondent Carlos R. Irizarry Santiago, CPA to show cause why he should not be ordered to appear for testimony and produce responsive documents pursuant to the subpoena validly issued and served upon him by the SEC.

Dated:  May 19, 2021                     Respectfully submitted,


                                        /s/ Paul W. Kisslinger
                                        Paul W. Kisslinger (D.C. Bar No. 465768)
                                        U.S. SECURITIES AND EXCHANGE COMMISSION
                                        Division of Enforcement
                                        100 F Street, N.E.
                                        Washington, DC 20549
                                        202.551.4427
                                        *kisslingerp@sec.gov*

                                        *Counsel for Applicant*